UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN SIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01030-TWP-TAB |
| ) | |
| CHELSIE BOYCE, LISA BLOUNT, ) | |
| MELANIE JOHNSON, LARA COMWAY, ) | |
| JENNIFER FLETCHER, HEATHER DAVIS, ) | |
| JERRY MELE, SARAH MARTIN, ) | |
| MEGAN WARD, MARRISSA RUNYAN, ) | |
| HOLLY DENMAN, LARA MCNEW, ) | |
| DEBRA ELLINGTON, NICOLE CLAYBORN, ) | |
| and CHRISTOPHER SHERRON, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by the Defendants, Chelsie Boyce, Lisa Blount, Melanie Johnson, Lara Conway (misspelled Comway), Jennifer Fletcher, Heather David, Jerry Mele, Sarah Martin, Megan Ward, Marrissa Ryan, Holly Denman, Lara Mcnew, Debra Ellington, Nicole Clayborn; and Christopher Sherron.[1] (collectively, "the Defendants"), (Dkt. 72). Also pending is Plaintiff John Sims ("Sims") Motion requesting the status of the Motion for Summary Judgment, (Dkt. 83). Sims initiated this 42 U.S.C. § 1983--deliberate indifference--civil rights action alleging generally that he asked each of the Defendant nurses for medical care during the period of February 18, 2018 through February 24, 2019, but they refused to provide treatment or to submit his health care request forms. For the reasons explained in this Entry, both Sims request and the Defendants' Motion are **granted.**

---

[1] Sims withdrew his claim against nurse Rhonda McCartney on September 12, 2019. (Dkt. 50.) Wexford Health was dismissed as a defendant in the Court's screening Entry. (Dkt. 10.)

# I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56(a).  "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor.  *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).  The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

# II. BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Sims as the non-moving party with respect to the Motion for Summary Judgment.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Sims is a prisoner formerly incarcerated at the New Castle Correctional Facility ("New Castle"). He is currently confined at the Wabash Valley Correctional Facility.  When Sims was

incarcerated at New Castle, he was housed in the mental health unit, also known as the New Castle Psychiatric Unit.  (Dkt. 74-1 at 4.) Sims has been housed or hospitalized in a mental health facility multiple times.  *Id.* at 5.

In February and March 2018, Sims knowingly stopped taking his blood pressure medication for a period of weeks (he "saved up a whole bunch of pills") to prove to his therapist that offenders were not being watched to see if they were taking their medications.  *Id.* at 7, 15.  After he voluntarily stopped taking his medication, a medical provider discontinued the prescription.  *Id*. at 16.

Sims engaged in various self-harming behaviors in May 2018, including biting fiberglass off his cell door, cutting himself with the fiberglass shards, swallowing pieces of the fiberglass shards, and inserting pieces of the fiberglass shards into his penis.  *Id.* at 16, 17.  He also, at times, would smear his feces all over himself and his cell, which he acknowledges would make it difficult for medical providers to be able to fully access him and pull him out to check his blood pressure.  *Id.* at 17.

Sims met with New Castle's on-site physician, Dr. Bruce Ippel, in May 2018, but Dr. Ippel did not prescribe any medication for blood pressure at that time.  *Id.* at 17.  Sims was placed on suicide watch from May until the middle of June 2018.  *Id.* at 16.  During his incarceration in the New Castle Psychiatric Unit, Sims was able to meet with Dr. Ippel, and other medical staff, including Nurse Dawson, to discuss his blood pressure concerns. *Id.* at 8.

Attached to his Complaint, Sims submitted a copy of a response to a grievance dated August 10, 2018, stating that Sims was seen by a provider on July 23, 2018, and it was determined that he did not need blood pressure medication.  (Dkt. 1-1 at 3.)  Sims' request to be put back on the medication was denied at that time.  *Id.*  He was not put back on the medication in August 2018

even though he saw a physician that month as well. (Dkt. 74-1 at 18.) Blood pressure medication was prescribed again in late September 2018 and Sims has remained on it since that time. *Id.* at 18, 19. Sims has continued to have some chest pain from time to time, even while taking the blood pressure medication. *Id.* at p. 21.

Sims believes he had a "mini stroke" sometime in September of 2018 because he had chest pain and then woke up on the floor. *Id.* at 5, 6. He saw a physician in September and October of 2018, but no doctor ever diagnosed Sims as having suffered a mini stroke. *Id.* at 6, 18. Sims acknowledges that salty foods, certain drugs he uses, and his mental illness and anxiety could contribute to his high blood pressure. *Id.* at 14, 16.

Sims is suing most of the Defendants because at various unspecified times they refused to pull him out of his cell to check his vital signs and/or refused to turn in his healthcare request forms when he complained of chest pain. *Id.* at 6-7, 8, 9, 10, 11-13. He does not recall when most of these incidents occurred. *Id*. More specifically, he is suing Nurse Boyce because she failed to provide medical treatment after he suffered what he believes was a mini stroke, even though it was never diagnosed by a physician. *Id.* at 5, 6. Nurse Johnson refused to pull him out for vitals and turn in his healthcare slips in May and June 2018 after he threatened her, made sexual comments to her, and exposed himself to her. *Id.* at 9. He is also suing Nurse Davis because she would not take his health care requests because he "got into it" with her brother at the prison. *Id.* at 10. Sims is suing Nurse Martin because she refused to take his vitals on two (2) occasions in October 2018 during a night shift visit. *Id.* He is suing Nurse Armstrong because she refused to give him his "cream" and his medications sometimes at night during 2018. *Id.* Sims is not sure if he ever had any face-to-face contact with Nurse Sherron. *Id.* at 13.

The Defendants seek resolution of the claims against them through summary judgment. (Dkt. 72.) Sims responded, (Dkt. 77), and the Defendants replied, (Dkt. 78). The Motion is ripe for resolution.

### III. DISCUSSION

Sims was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his claims of deliberate indifference. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.*

"[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible…." *Arnett,* 658 F.3d at 754. Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

The Defendants argue that Sims did not suffer from any serious medical condition, but even if his history of high blood pressure is assumed to be a serious medical condition, there is no

evidence of deliberate indifference on their part. For purposes of this summary judgment ruling, the Court will assume that Sims had a serious medical condition of high blood pressure. The dispositive issues are whether the Defendants knew that Sims suffered from high blood pressure, whether they failed to take reasonable measures in response to that condition, and whether Sims thereby suffered harm.

Sims' medical records have not been made part of the record. During Sims' deposition, he and defense counsel discussed his medical records and this ruling is based on his sworn testimony. It is undisputed that during the relevant time period, Sims saw physicians and other medical providers at least once a month. Those physicians were aware of Sims' high blood pressure and sometimes prescribed medication for it and at other times they determined that it was not necessary. Sims sometimes complained of chest pain. He testified that he woke up one day on the floor, causing him to believe he had suffered a mini stroke. His medication was renewed after that incident.

Although Sims has engaged in misconduct caused by his mental illness that would make it far more challenging for any medical provider to do his or her job, Sims is correct in believing that he still deserves proper medical care. There is no evidence, however, that any of the nurse defendants had the authority to prescribe or modify prescription orders. There is also no evidence that Sims required any specific treatment that he was denied. As noted, Sims was seen by physicians on a regular basis for his health care needs. No evidence supports an inference that any Defendant knowingly turned a blind eye to any inappropriate or harmful treatment provided by any physician. *See e.g., Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most

6

situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.").

Some of Sims' allegations do not come close to supporting an inference of deliberate indifference. For instance, his claim against Nurse Sherron falls away because Sims is not even sure he had any contact with him. His claim against Nurse Armstrong fails because there is no evidence of what type of "cream" she allegedly failed to give him. The record also lacks specificity as to when each nurse failed to take his blood pressure or turn in a health care request.

In addition, Sims has not designated any evidence indicating that the Defendants caused or worsened any injury. Absent such a showing, he is not entitled to relief. *Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . caused any injury.") (internal quotation omitted); *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) ("[T]here is no tort without an actionable injury caused by the defendant's wrongful act."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("[E]ven in the field of constitutional torts . . . [a] tort to be actionable requires injury.").

Sims has failed to designate any evidence that would support a finding that the nurses actually knew of and disregarded a substantial risk of harm. Under these evidentiary circumstances, no reasonable jury could find that any of the Defendants were deliberately indifferent to Sims' condition of high blood pressure or any other serious medical need. The Defendants are entitled to summary judgment in their favor.

## IV. CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment, Dkt. [72], is **GRANTED.** Sims' Motion requesting the status of the Motion for Summary Judgment, Dkt. [83], is **GRANTED** to the extent this ruling is issued.

Final judgment consistent with this Entry and the Entries at Dkt. 10 and Dkt. 50 shall now issue.

**SO ORDERED.**

Date: 2/17/2021

                                                Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Sims, #232623
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, Indiana  47838

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com